117 So.2d 41 (1960)
CENTRAL MUTUAL INSURANCE COMPANY, an Ohio Corporation, Authorized to Do Business in the State of Florida, Appellant,
v.
Bernard NEWMAN, Appellee.
No. 59-350.
District Court of Appeal of Florida. Third District.
January 11, 1960.
Morehead, Forrest, Gotthardt & Greenberg and Edward M. Stein, Miami, for appellant.
Robert M. McClosky and Stanley S. Stein, Miami Beach, for appellee.
BARNS, PAUL D., Associate Judge.
Judgment was entered against the appellant-defendant in an action against it as insurer on a jewelry "floater" policy. Appeal was taken from the final judgment entered after trial to the judge and the exclusion of evidence was assigned as error. We find error and reverse.

Statement of the Case.
The case was tried by the Court without a jury. The parties stipulated that the sole issue was the credibility of the Plaintiff to be determined by the Court from the evidence. The Court found for the Plaintiff and judgment was entered in the sum of $5,812, including costs and attorneys' *42 fees. During the trial, the Defendant offered into evidence prior inconsistent statements of the Plaintiff, consisting of a sworn statement given by the Plaintiff to Defendant's counsel pursuant to provisions of the policy, and marked as Defendant's Exhibit A-2 for identification, and a signed statement of the Plaintiff marked as Defendant's Exhibit A-1 for identification. Both offers were refused by the Court which refusals are assigned as error.

Statement of Facts.
The policy covered seven pieces of jewelry owned by the Plaintiff and his wife. Four of the insured pieces allegedly disappeared in a manner unknown to the Plaintiff. The loss was alleged to have occurred sometime between July 20 and July 22, 1958, while the Plaintiff, according to his allegations and testimony, was on a business trip to Atlanta, Georgia.
The Plaintiff was a liquidator of distressed and closed-out, etc., merchandise and resided in Miami, Florida. About a week before the loss, the Plaintiff was having lunch with a group of men and one of the members of this luncheon group told him of several businesses in Atlanta that had merchandise for sale. At the trial, the Plaintiff testified that this lunch took place at a restaurant named "Wolfie's", while in a sworn statement given by him previously, he said that this group was having lunch at a restaurant called the "Great Gables". He could not remember the name of the man who told him of the businesses in Atlanta, nor could he remember the names or name of the persons with whom he was having lunch at this time.
The unknown friend had written down the names and addresses of the businesses in Atlanta and the Plaintiff carried them in his pocket for about several days or a week before making the trip. Then the Plaintiff allegedly made a trip for the purpose of inspecting this merchandise. He did not remember the names of the places of business he went to see in Atlanta, and he either did not remember or was uncertain of the name of the street on which they were located.
The Plaintiff's testimony and previous statements as to the day and the date upon which he allegedly made this trip to Atlanta are inconsistent. On July 25, 1958, a few days after this alleged trip, Mr. Matou, an agent of the Defendant, took a statement from the Plaintiff concerning some of the trip. On October 2, 1958, Mr. Gotthardt, counsel for the Defendant, took a sworn statement from him concerning the details of the trip. After instituting suit, his deposition was taken on November 21, 1958. His previous statements and testimony at the trial, which was held on April 8, 1959, are inconsistent in many details concerning his trip to Atlanta.
The jewelry which was lost or stolen was kept in a brown pouch. Some of the jewelry which he carried with him on his trip belonged to his wife. Despite the fact that he had opened the pouch while in Atlanta to remove and return jewelry to it, he stated that he did not know that his wife's jewelry was in the pouch until his wife told him. She did not testify. The testimony does not reveal how many of the seven pieces insured were in the bag.
The subject matter of the loss was in the exclusive control of the Plaintiff and the facts surrounding the alleged loss were virtually within his exclusive knowledge, and therefore, were not subject to being controverted by testimony offered by the Defendant. The only defense upon which the Defendant could rely is that the Plaintiff's story is inherently improbable, illogical, and unworthy of credit.

Conclusions.
Concerning the impeachment of the testimony of a witness by the use of prior self-contradictory statements, III Wigmore on Evidence, 3rd ed. § 1017, p. 684, states:
"Theory of Relevancy. The end aimed at by the present sort of impeaching evidence [self-contradiction] is the same as *43 that of the preceding sort, [specific error] namely, to show the witness to be in general capable of making errors in his testimony (ante, § 1000); for upon perceiving that the witness has made an erroneous statement upon one point, we are ready to infer that he is capable of making an error upon other points. But the method of showing this is here slightly different; for, instead of invoking the assertions of other witnesses to prove his specific error, we resort simply to witness' own prior statements, in which he has given a contrary version. We place his contradictory statements side by side, and, as both cannot be correct, we realize that in at least one of the two he must have spoken erroneously. Thus, we have detected him in one specific error, from which may be inferred a capacity to make other errors. Two important features of this method of proof are to be noticed.
(1) The general end attained is the same indefinite end attained by the preceding method (ante § 1000), i.e., some undefined capacity to err; it may be a moral disposition to lie, it may be partisan bias, it may be faulty observation, it may be defective recollection, or any other quality. No specific defect is indicated; but each and all are hinted at. It has been often said that a Prior Self-Contradiction shows a defect either in the memory or in the honesty of the witness.
"1852, Shaw, C.J., in Com. v. Starkweather, 10 Cush. [Mass., 59] 60: `It is founded on the obvious consideration that both accounts cannot be true, and tends to prove a defect of intelligence or memory on the subject testified of, or, what is worse, a want of moral honesty and regard to truth; and so, in either case, that the witness is less worthy of belief.'
"1870, Cole, J., in Knox v. Johns[t]on, 26 Wis. 41 43: `This circumstance is well calculated to throw suspicion on her accuracy and credibility. It shows that her memory is exceedingly unreliable and treacherous in reference to the times of payment of moneys by her, or that she does not realize the importance of adhering to actual facts when making statements under oath'."
McCormick on Evidence, p. 63, citing Wigmore, supra, states:
"When a witness has testified to facts material in the case, it is provable by way of impeachment that he has previously made statements relating to these same facts which are inconsistent with his present testimony. The making of these previous statements may be drawn out in cross-examination of the witness himself, or if on such cross-examination the witness has denied making the statement, or has failed to remember it, the making of the statement may be proved by another witness.

* * * * * *
"The theory of attack by prior inconsistent statements is not based on the assumption that the present testimony is false and the former statement true but rather upon the notion that talking one way on the stand and another way previously is blowing hot and cold, and raises a doubt as to the truthfulness of both statements."
We find error in refusing to admit the prior statements of the plaintiff and the cause is remanded for trial to the judge unless on motion a trial to a jury is awarded. See Florida Rules of Civil Procedure, Rules 2.1 and 2.8(a), 31 F.S.A.; 5 Moores Federal Practice (2nd ed.) § 38.44 p. 342, and Roth v. Hyer, 5 Cir., 1944, 142 F.2d 227, 228.
Reversed.
PEARSON, Acting Chief Judge, and CARROLL, CHAS., J., concur.